IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:21-cv-00650-MOC-WCM

JANETTE CARDWELL,                       )
                                        )
                        Plaintiff,      )
                                        )        MEMORANDUM AND
v.                                      )        RECOMMENDATION
                                        )
COMMISSIONER OF THE SOCIAL              )
SECURITY ADMINISTRATION,                )
                                        )
                        Defendant.      )
_____ )

This matter is before the Court on the Commissioner's Motion for Summary Judgment (Doc. 11), Plaintiff's October 17, 2022 filing which the undersigned has construed as Plaintiff's Motion for Summary Judgment (Doc. 14), and the Commissioner's Motion to Strike (Doc. 15), which have been referred to the undersigned pursuant to 28 U.S.C. § 636 for the entry of a memorandum and recommendation.

I. Procedural Background

On March 31, 2017, Plaintiff Janette Cardwell ("Plaintiff") filed applications for disability insurance benefits and supplemental security income. Transcript of the Administrative Record ("AR") 211-217, 218-226. Plaintiff alleged disability beginning on January 1, 2017.

1

Following an administrative hearing at which Plaintiff appeared and testified, Plaintiff's claim was denied by an Administrative Law Judge ("ALJ") in an opinion issued on June 19, 2019. AR 22-41. That decision is the Commissioner's final decision for purposes of this action.

On December 7, 2021, Plaintiff, proceeding *pro se*, filed her Complaint. Doc. 1.[1] Plaintiff filed an Amended Complaint on December 12, 2021, Doc. 3, and the Commissioner filed the Administrative Record ("AR") on February 22, 2022. Doc. 9.

On February 23, 2022, the Court issued a scheduling order requiring Plaintiff to file a Motion for Summary Judgment by April 25, 2022 and the Commissioner to file a Motion for Summary Judgment by June 23, 2022. Plaintiff did not file a Motion by the April 25 deadline and did not request an extension of that deadline prior to its expiration.

On June 23, 2022, the Commissioner filed her Motion for Summary Judgment. Docs. 11, 12. Plaintiff's response to the Commissioner's Motion was due by July 7, 2022. However, Plaintiff did not file a response by that deadline.

On October 17, 2022, Plaintiff submitted a filing arguing that the Court should not affirm the Commissioner's decision. Doc. 14. That filing has been docketed as Plaintiff's Motion for Summary Judgment.

---

[1] See AR 1-2 (November 9, 2021 correspondence from Appeals Council granting Plaintiff a final thirty day extension of time to file a civil action).

On November 3, 2022, the Commissioner filed a Motion to Strike Plaintiff's October 17 filing. Docs. 15, 16. Plaintiff has not responded to the Motion to Strike, and the time for doing so has expired.

## II.   The Motion to Strike

The Commissioner moves to strike Plaintiff's filing "on the ground that the pleading is six months late." Doc. 15 at 1. While the Commissioner acknowledges that Plaintiff is proceeding *pro se*, she contends that this status does not relieve Plaintiff of her obligation to comply with the Court's scheduling order and that Plaintiff has provided contradictory explanations for her late filing. Doc. 16 at 2-3. In the alternative, the Commissioner requests that, if the Court does not strike Plaintiff's October 17 filing, she be allowed thirty days to file a response.

The Commissioner is correct that a plaintiff who is proceeding *pro se* has an obligation to be aware of and to follow the Federal Rules of Civil Procedure, this Court's local civil rules, and any orders (including scheduling orders) issued by the Court.

However, bearing in mind that, where possible, matters should be decided on their merits, and further in light of Plaintiff's (albeit late) submission and the Commissioner's comprehensive Motion for Summary

3

Judgment, the undersigned has considered Plaintiff's filing and will recommend that the Motion to Strike be denied.[2]

## III. The ALJ's Decision

The ALJ found that Plaintiff had the severe impairments of "lumbar spine and cervical spine spondylosis with radiculopathy; fibromyalgia; obesity; and arthritis." AR 28. After determining that Plaintiff's impairments did not meet or medically equal one of the listed impairments, the ALJ found that Plaintiff had the residual functional capacity ("RFC") "to perform light work…except she can only occasionally climb, balance, stoop, kneel, crouch, and crawl." AR 30.

Applying this RFC, the ALJ found that Plaintiff was capable of performing her past relevant work and, alternatively, capable of performing other jobs that existed in significant numbers in the national economy, such that she was not disabled during the relevant period. AR 35.

## IV. Plaintiff's Allegations of Error

Though Plaintiff's filing is not explicitly clear, the undersigned reads her submission to primarily argue that the ALJ erred in finding that Plaintiff's impairment(s) did not meet or medically equal the severity of a listed impairment, and erred when considering certain opinion evidence and

---

[2] The undersigned likewise concludes that this matter can be adequately analyzed without a further submission from the Commissioner.

4

Plaintiff's pain and subjective symptoms when developing Plaintiff's RFC. See generally Doc. 14.

V. Standard of Review

A claimant has the burden of proving that he or she suffers from a disability, which is defined as a medically determinable physical or mental impairment lasting at least 12 months that prevents the claimant from engaging in substantial gainful activity. 20 C.F.R. §§ 404.1505; 416.905. The regulations require the Commissioner to evaluate each claim for benefits using a five-step sequential analysis. 20 C.F.R. §§ 404.1520; 416.920. The burden rests on the claimant through the first four steps to prove disability. Monroe v. Colvin, 826 F.3d 176, 179 (4th Cir. 2016). If the claimant is successful at these steps, then the burden shifts to the Commissioner to prove at step five that the claimant can perform other work. Mascio v. Colvin, 780 F.3d 632, 635 (4th Cir. 2015); Monroe, 826 F.3d at 180.

Under 42 U.S.C. § 405(g), judicial review of a final decision of the Commissioner denying disability benefits is limited to whether substantial evidence exists in the record as a whole to support the Commissioner's findings, and whether the Commissioner's final decision applies the proper legal standards. Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). When a federal district court reviews the Commissioner's decision, it does not "re-weigh conflicting evidence, make credibility determinations, or substitute [its]

judgment for that of the [Commissioner]." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996). Accordingly, the issue before the court is not whether Plaintiff is disabled but, rather, whether the Commissioner's decision that she is not disabled is supported by substantial evidence in the record and based on the correct application of the law. Id.

## VI. Discussion

### A. Listing 1.04

Plaintiff appears to take issue with the ALJ's finding that her impairments did not meet or medically equal the severity of Listing 1.04, relative to disorders of the spine. See Doc. 14 at 2-3; see also Doc. 14 at 6-7.

The Listings detail impairments that are considered "severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience." 20 C.F.R. §§ 404.1525(a) & 416.925(a). "A claimant is entitled to a conclusive presumption that he is impaired if he can show that his condition 'meets or equals the listed impairments.'" Radford v. Colvin, 734 F.3d 288, 291 (4th Cir. 2013). The burden of presenting evidence that an impairment meets or is medically equivalent to a listed impairment lies with the claimant. Kellough v. Heckler, 785 F.2d 1147, 1152 (4th Cir. 1986). An impairment meets a listing if it satisfies all the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify. Sullivan v. Zebley, 493 U.S. 521, 530 (1990). To

establish medical equivalence, a claimant must "present medical findings equal in severity to all the criteria" for the particular listing. Id. at 531.

Here, Plaintiff argues that information from a physical therapist, Robert McDowell, supports a finding that she is presumptively disabled pursuant to the Listings. Plaintiff specifically references Mr. McDowell's December 13, 2018 treatment record, in which Plaintiff's "problem list" was "bed mobility deficits, decreased activity tolerance, decreased knowledge of condition, functional limitation, joint stiffness, muscle weakness, pain limiting function/lifestyle, patient/family education needs, postural deficits, ROM/flexibility limitations, soft tissue dysfunction, stabilization deficits, transfer deficits." AR 420. Plaintiff does not, however, explain why this "problem list" demonstrates that she was presumptively disabled. Further, in his decision, the ALJ specifically considered Listing 1.04 and explained that while imaging of Plaintiff's spine indicated issues including spondylosis, disc space narrowing, a "central ruptured disc," and an "annular tear with disc bulge," Plaintiff was found to have generally normal musculoskeletal findings upon exam. See AR 28-29 (citing AR 779-780).

Therefore, the undersigned is not persuaded that the ALJ erred in finding that Plaintiff's impairments did not meet or medically equal a listed impairment.

7

Case 3:21-cv-00650-MOC-WCM   Document 17   Filed 02/03/23   Page 7 of 15

### B. Consideration of Opinion Evidence

For applications filed on or after March 27, 2017, such as Plaintiff's, the Administration has changed how adjudicators assess medical opinions and prior administrative medical findings. See 82 Fed. Reg. 5844-01; 20 C.F.R. § 404.1520c(a)); 20 C.F.R. § 416.920c(a).[3] Specifically, an ALJ is required to consider and articulate in the administrative decision how persuasive he or she finds each medical opinion or prior administrative medical finding to be. 20 C.F.R. §§ 404.1520c(a)); 416.920c(a).

Here, Plaintiff argues that the ALJ should not have "taken into consideration" the opinion of Dr. Perry Roy, who performed a physical consultative and issued a report on August 5, 2017, because Dr. Roy examined Plaintiff one time for 45 minutes. See Doc. 14 at 8; see also AR 330-341. Pursuant to the regulations referenced above, however, it was appropriate for the ALJ to consider and articulate how persuasive he found Dr. Roy's report to be.

In his report, Dr. Roy indicated that upon examination, Plaintiff had normal neurological and musculoskeletal findings, no joint swelling,

---

[3] The revised regulations define a "prior administrative medical finding" as a "finding, other than the ultimate determination about whether you are disabled, about a medical issue made by our Federal and State agency medical and psychological consultants at a prior level of review…in your current claim based on their review of the evidence in your case record." See 20 C.F.R. §§ 404.1513(a)(5); 416.913(a)(5).

8

tenderness, or deformity, and that Plaintiff was able to lift, carry, and handle objects, squat and rise with ease, rise from a sitting position, and get up and down from the examination table without difficulty. AR 335-338. Additionally, Plaintiff had negative straight leg raises bilaterally, could walk on her heels and toes, had normal tandem walking, could hop on one foot bilaterally, had normal range of motion in her neck, back, and hands, and did not have any tender points. Id. Dr. Roy concluded that Plaintiff had "mild" functional limitations in handling and grasping due to hand pain. AR 339. Dr. Roy did not indicate any other functional limitations.

In his decision, the ALJ noted Dr. Roy's August 2017 report, including the findings and observations set forth above. AR 33-34. The ALJ found Dr. Roy's opinion regarding Plaintiff's mild handling and grasping limitations unpersuasive and cited multiple medical records to support that conclusion. See AR 34 (citing, among others, AR 338 (Dr. Roy's statements that Plaintiff's hand could be fully extended, she could make a fist, and could "pinch, grasp and manipulate small and large objects without difficulty")). The undersigned is persuaded that the ALJ's treatment of Dr. Roy's opinion was supported by substantial evidence. See Petty v. Saul, No. 1:19-cv-00012-FDW, 2020 WL 1441436, at *4 (W.D.N.C. March 20, 2020) ("The ALJ considered Dr. Ocloo's opinion in light of the rest of the record and decided it warranted 'some' weight.

9

The ALJ provided substantial evidence for her weight determination; therefore, the Court will not disturb the ALJ's decision").

### C. Plaintiff's Subjective Symptoms

Plaintiff also argues that the ALJ failed to consider appropriately her "continuous" pain. See Doc. 14 at 3, 5.[4]

When evaluating a claimant's symptoms, an ALJ must use the two-step framework set forth in 20 C.F.R. §§ 404.1529 and/or 416.929 and SSR 16-3p, 2016 WL 1119029 (March 16, 2016).

First, the ALJ must determine whether objective medical evidence presents a "medically determinable impairment" that could reasonably be expected to produce the claimant's alleged symptoms. See 20 C.F.R. § 404.1529(b); SSR 16-3p, 2016 WL 1119029, at *3.[5]

Second, the ALJ must assess the intensity and persistence of the alleged symptoms to determine how they affect the claimant's ability to work and whether the claimant is disabled. See 20 C.F.R. § 404.1529(c); SSR 16-3p, 2016 WL 1119029, at *4. The Fourth Circuit has consistently recognized that "[a]t

---

[4] Plaintiff also seems to raise an argument regarding her limited or restricted movement. See Doc. 14 at 3. The ALJ, however, cited multiple records reflecting Plaintiff's normal range of motion. See, e.g., AR 31 (citing AR 325; AR 32 (citing AR 331-341); AR 33 (citing AR 779-780)).

[5] Plaintiff appears to argue that the ALJ erred when considering whether her fibromyalgia was a medically determinable impairment. Doc. 14 at 6. The ALJ, though, did consider Plaintiff's fibromyalgia to be a medically determinable impairment. See AR 28, 31.

10

this step, objective evidence is not required to find the claimant disabled." Arakas v. Commissioner, Social Security Administration, 983 F.3d 83, 95 (4th Cir. 2020). In evaluating the intensity, persistence and limiting effects of an individual's symptoms, an ALJ is to consider factors such as the individual's medical history, treatment history, and daily activities. SSR 16-3p; Titles II and XVI: Evaluation of Symptoms in Disability Claims, 2016 WL 1119029 (Mar. 16, 2016) (citing 20 C.F.R. §§ 404.1529(c), 416.929(c)).

In cases involving fibromyalgia, the Fourth Circuit has recognized that "'symptoms are entirely subjective,' with the exception of trigger-point evidence" and that physical examinations of patients with fibromyalgia will usually yield normal results. Arakas, 983 F.3d at 95 (citing Sarchet v. Chater, 78 F.3d 305, 306 (7th Cir. 1996); Green-Younger v. Barnhart, 335 F.3d 99, 108–09 (2d Cir. 2003)). Accordingly, "ALJs may not rely on objective medical evidence (or the lack thereof)—even as just one of multiple factors—to discount a claimant's subjective complaints regarding symptoms of fibromyalgia or some other disease that does not produce such evidence. Objective indicators such as normal clinical and laboratory results simply have no relevance to the severity, persistence, or limiting effects of a claimant's fibromyalgia, based on the current medical understanding of the disease." Id. at 97; see also India G. v. Kijakazi, No. DLB-20-1704, 2021 WL 3930430, at *3 (D. Md. Sept. 1, 2021) ("Phrased differently, the Fourth Circuit noted that normal, objective clinical

and laboratory results are not inconsistent with allegations of disabling pain. Thus, after *Arakas*, the use of that objective medical evidence to discount the plaintiff's complaints of the disease's limiting effects is improper in the Fourth Circuit").

Here, the ALJ determined that Plaintiff had the severe impairments of fibromyalgia, lumbar and cervical spine spondylosis with radiculopathy, obesity, and arthritis. AR 28. In evaluating Plaintiff's symptoms, the ALJ stated that he "considered the claimant's reports of ongoing cervical and lumbar pain, along with fibromyalgia and arthritis [and] claimant's positive ANA screening." AR 33. However, the ALJ went on to explain that he also considered:

> the claimant's reports to provider [sic] that she had significant pain relief following injections….the claimant's physical examinations, which showed minimal symptoms and generally normal musculoskeletal findings during the period at issue, including full strength, intact sensation, and negative bilateral straight leg raise test….claimant's reports to providers that she experienced pain relief with medication…the claimant's report of "better control" of her chronic pain with medication, and lack of tender points during examination.

AR 33.

Prior to this conclusion, the ALJ cited specific medical records consistent with his characterization of Plaintiff's symptoms. See AR 31 (citing AR 406-407 (April 2017 exam in which Plaintiff reported her chronic pain was "better

12

controlled" with medication); AR 332 (August 2017 exam during which Plaintiff reported a pain level of 3 and that she was treating her pain with medication and rest); AR 374 (showing no tender points); AR 347 (no tenderness to palpitation); AR 353 (May 2018 record indicating Plaintiff reported 60% pain relief for two weeks following injection and that tramadol provided pain relief); AR 377 (reporting a reduction in pain following injection); AR 708 (indicating that radiofrequency ablation "completely resolved" low back pain, but that Plaintiff continued to report other pain)). Consequently, substantial evidence supports the ALJ's consideration of Plaintiff's subjective symptoms during the relevant period.[6]

---

[6] Plaintiff's brief includes many references to her pain and symptoms after the date of the ALJ's decision. See e.g. Doc. 14 at 4 (stating that by September 2019 Plaintiff was unable to "stand up straight or walk at all," referencing surgeries in 2020 and 2021, and asserting that Plaintiff began seeing a new pain doctor in 2022). Plaintiff, however, did not make an appropriate request to the Appeals Council that evidence relating to her condition after the date of the ALJ's decision be considered with respect to this claim.

## VII. Recommendation

For the reasons stated above, the undersigned respectfully **RECOMMENDS** that the Commissioner's Motion to Strike (Doc. 15) be **DENIED**, that Plaintiff's Motion for Summary Judgment (Doc. 14) be **DENIED**, and that the Commissioner's Motion for Summary Judgment (Doc. 11) be **GRANTED**.

Signed: February 3, 2023

W. Carleton Metcalf
United States Magistrate Judge

## Time for Objections

The parties are hereby advised that, pursuant to Title 28, United States Code, Section 636, and Federal Rule of Civil Procedure 72(b)(2), written objections to the findings of fact, conclusions of law, and recommendation contained herein must be filed within **fourteen (14)** days of service of same. **Responses to the objections must be filed within fourteen (14) days of service of the objections.** Failure to file objections to this Memorandum and Recommendation with the presiding District Judge will preclude the parties from raising such objections on appeal. See Thomas v. Arn, 474 U.S. 140, 140 (1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir. 1984).